# CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY *v.* ARTERY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF IOWA.

No. 91.    Argued November 25, 1890. — Decided December 22, 1890.

Section 1307 of the Code of Iowa of 1873 in regard to the liability of a railway corporation for damages to its employés in consequence of the neglect of their coemployés, in connection with the use and operation of the railway, construed.

The decisions of the Supreme Court of Iowa as to the statute, reviewed.

An injury sustained by an employé while riding on a car propelled by handpower, through the negligence of a coemployé riding on the same car, is one sustained in connection with the use and operation of the railway, within section 1307.

If a witness is to be impeached, in consequence of his having made, on some other occasion, different statements, oral or written, from those which he makes on the witness stand, as to material points in the case, his attention must first be called, on cross-examination, to the particular time and occasion when, the place where, and the person to whom he made the varying statements.

The Circuit Court erred in laying it down as a rule, that a written statement signed by a witness and admitted by him to have been so signed, could not be used in cross-examining him as to material points testified to by him; and in announcing it as a further rule, that the only way to impeach a witness by showing contradictory statements made by him, is to call as a witness the person to whom or in whose presence the alleged contradictory statements were made.

The rule of evidence, that if, on cross-examination, a witness admits a letter to be in his handwriting, he cannot be questioned by counsel as to whether statements, such as the counsel may suggest, are contained in it, but the

whole letter must be read as the evidence of the existence of the statements, does not apply to the present case, because the opposite party did not take the objection that the whole statement was not, but should have been, read as evidence, and the court, with his assent, excluded it from being read in evidence.

THE plaintiff below (defendant in error) sued the plaintiff in error (defendant below) to recover for injuries inflicted through the neglect of a coemployé, and recovered judgment. The case in this court is stated in the opinion.

*Mr. John W. Cary* for plaintiff in error.

*Mr. Delos E. Lyon* for defendant in error. *Mr. H. B. Fouke* was with him on the brief.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the District Court of Dubuque County, in the State of Iowa, by James Artery against the Chicago, Milwaukee and St. Paul Railway Company, a Wisconsin corporation, to recover damages for a personal injury, and removed by the defendant into the Circuit Court of the United States for the Northern District of Iowa.

The petition alleges that the defendant owns and operates a line of railroad from Dubuque in Iowa to La Crosse in Wisconsin and St. Paul in Minnesota, and in the operation of it uses locomotives propelled by steam, hand-cars propelled by hand, and cars drawn by its locomotives; that the plaintiff, on March 5, 1883, and for several months prior thereto, was in the employ of the defendant in the use and operation of the road in the county of Allamakee, in Iowa, in working upon its road and road-bed, in keeping the ties in good order, in keeping the road well and properly ballasted, in removing obstructions from its track, in keeping its culverts and crossings in repair, in keeping the iron on the road properly spiked and fastened, and in keeping the road-bed fit for use and operation along its line of road and right of way in the county of Allamakee; that in doing such work, cars propelled by steam and hand-cars were used by the plaintiff and others, the cars being

furnished by the defendant; that while in such employ, the plaintiff left the village of Harper's Ferry, in said county, with other employés, under a foreman of the defendant, named Rellehan, and went north some ten miles, making repairs on the road; that, after doing such work, and towards evening, the foreman ordered a start to return to Harper's Ferry, on a small hand-car, on which were placed seven or eight men, and more than the car could or ought to carry; that, when the hand-car was ordered by the foreman to start to Harper's Ferry, it was started at the time that a train of cars was due, of which the plaintiff then had no knowledge; that the snow had been falling and there was snow on the rails, and the foreman ordered the plaintiff to get a shovel and seat himself on the front of the hand-car, and hold the shovel on the top of the rail, in order to move the snow as the hand-car went forward; that on the hand-car there were no places provided for the feet to rest upon while performing such duty; that the plaintiff was compelled, in order to hold the shovel, to exert all his strength, and by muscular exertion hold up his feet and at the same time guide and hold the shovel; that the hand-car was run ahead of the train then due, at the rate of more than ten miles an hour, being a dangerous speed; that while it was so running, and the plaintiff was holding the shovel, and while it was crossing over a cattle-guard in the road, and without any fault or negligence on his part, his foot was caught and he was thrown off and under the hand-car, his body doubled up, his spine injured, and his backbone broken; that by reason thereof he has been confined to his bed ever since, unable to work and suffering great pain in body and mind; and that all this happened by the negligence of the defendant in furnishing unfit and improper hand-cars, in requiring onerous and dangerous duty from the plaintiff, in running the hand-car at a dangerous rate of speed, and in overloading it. Damages are claimed in the sum of $20,000, besides the sum of $1000 for money paid for board, care, and surgical and medical treatment. The petition was afterwards amended by alleging further, that the hand-car was not constructed with reasonably safe appliances to push the snow off from the rails, which

appliances could easily have been furnished by the defendant; that it was wanting in the proper kind of a brake and the proper kind of a foot-rest for doing the kind of work which the plaintiff was ordered to do ; that, when the plaintiff was ordered by the foreman to sit down on the front of the hand-car and hold the shovel, he was unaware of any danger therefrom, and had reason to believe and did believe that the hand-car would be run by the foreman at a safe rate of speed ; that it was run at an unreasonable and unnecessarily fast and dangerous speed, which the plaintiff could not control, nor could he leave the car while it was in motion ; that the cattle-guard was made of three-cornered pieces of wood, placed negligently on top of the ties, across the track instead of lengthwise, and some of the three-cornered pieces stood higher than the surface of the rail, of which fact the plaintiff was not then aware ; and that, by reason of such negligent construction of the cattle-guard, the speed of the hand-car, and the dangerous and tiresome position in which the defendant placed the plaintiff, he was injured, either by his foot or feet coming in contact with the rail or the three-cornered pieces, or by the shovel getting caught on the rail or on such pieces, or by all of such circumstances.

The answer of the defendant contains a general denial and an allegation of contributory negligence on the part of the plaintiff. The case was tried by a jury, which rendered a verdict for the plaintiff of $13,500, for which, with costs, he had judgment, to review which the defendant has brought a writ of error.

One of the principal points taken by the defendant is that this was a case of an injury resulting from the negligence of a coemployé, namely, the foreman Rellehan, in the management and running of the hand-car, and did not fall within the provisions of the statute of Iowa on the subject.

On the 8th of April, 1862, a statute was enacted in Iowa, Laws of 1862, c. 169, sec. 7, p. 198, as follows : " SEC. 7. Every railroad company shall be liable for all damages sustained by any person, including employés of the company, in consequence of any neglect of the agents or by any mismanagement of the

engineers or other employés of the corporation to any person sustaining such damage."

This provision was afterwards modified by section 1307 of the Code of Iowa of 1873, which was in force at the time of this accident, and read as follows: "Sec. 1307. Every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employés of the corporation, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers, or other employés, when such wrongs are in any manner connected with the use and operation of any railway, on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." The modification introduced by the later statute is, that the wrongs for which the corporation is to be liable must be wrongs connected with the use and operation of the railway on or about which the employés are employed.

It is contended by the defendant that, under the decisions of the Supreme Court of Iowa upon this statute, only employés engaged in operating and moving trains, and who are injured by such trains, and employés who, while in the discharge of their duty, are injured by trains used in operating the railway, are within the statute, and that, in the present case, the plaintiff was not engaged in operating and moving a train, and was not injured by a train used in operating the railway. But we cannot concur in this view.

In *Deppe* v. *Chicago, Rock Island &c. Railway*, 36 Iowa, 52, it was held, under the act of 1862, that the statute included the case of an employé who was engaged in connection with a dirt train, and was injured while loading a car, by the falling of a bank of earth; and in *Frandsen* v. *Chicago, Rock Island &c. Railway*, 36 Iowa, 372, that a person employed as a section hand, in the business of keeping a certain part of the road in repair, and going with his coemployés on the track in a hand-car for that purpose, was within the act of 1862, he being injured through a collision with the engine of a passenger train,

which struck the hand-car and threw it against the plaintiff while he was on the ground and engaged in trying to remove the hand-car out of the way of the engine.

The case of *Schroeder* v. *Chicago, Rock Island &c. Railway*, 41 Iowa, 344, arose under section 1307 of the Code. It was said in that case, that that section applied only to accidents growing out of the use and operation of the road, and did not apply to all persons employed by the corporation, without regard to their employment, and it was held, therefore, that it did not cover the case of Schroeder, who was not connected with the operation of the road, but who, while engaged in removing the timbers of an abandoned bridge and loading them on cars, was injured by some of the timbers which fell from a car. The same view was held in *Potter* v. *Chicago, Rock Island &c. Railway*, 46 Iowa, 399, where Potter, a laborer in the machine shop of the company, was injured by a locomotive driving-wheel which he and other employés were moving by hand.

It was held, in *Schroeder* v. *Chicago, Rock Island &c. Railway*, 47 Iowa, 375, that where a person was required, in the course of his employment by the railroad company, to get upon a train, and did so, he was to be regarded as being engaged in its operation, although his employment might not be connected with the running of the train; and that the company was liable to him for injuries resulting from the negligence of a coemployé.

In *Pyne* v. *Chicago, Burlington &c. Railway*, 54 Iowa, 223, Pyne was employed by the railroad company as a private detective, and, while walking on the track, in the performance of his duties, and in obedience to the orders of the company, was injured, without negligence on his part, through the negligence of the engineer of a passing train, and it was held that his case fell within the provisions of section 1307, and that he was entitled to recover from the company for the injuries received by him.

In *Smith* v. *Burlington &c. Railway*, 59 Iowa, 73, where it appeared that the plaintiff was only a section-hand, and, when injured, was engaged in loading a car, and it did not appear that

his service pertained to the operation of the road, it was held that he could not recover for an injury which occurred through the negligence of a coemployé, the court remarking that, under section 1307 of the Code, it must be shown that his employment was connected with the operation of the railway.

It was held, in *Malone* v. *Burlington &c. Railway*, 61 Iowa, 326, that a person whose duty it was to wipe the company's engines and to do other work about the round-house, and to open the doors of that house so as to allow the engines to pass in and out, and who, while endeavoring to shut those doors, was injured by the carelessness of his coemployés who were at the time engaged with him in the same effort, could not recover under section 1307, for the injury, because it was not " in any manner connected with the use and operation " of the railway, as contemplated by that section.

In *Foley* v. *Chicago, Rock Island &c. Railway*, 64 Iowa, 644, it was held that a car-repairer, whose duty it was to repair cars on the track, but who had nothing to do with cars in motion, except to ride on passenger or freight trains to and from the places where his services were required, was not engaged in the operation of a railway, within the meaning of section 1307, and could not recover of the company for an injury received while in the discharge of his duties, through the negligence of a coemployé. Foley was engaged at the time in making repairs on a car, and was injured while under the car, through its being moved improperly.

The *Malone Case* came up again, in 65 Iowa, 417, and it was there held that Malone, whose duty it was to wipe engines, open and close the doors of an engine-house, and remove snow from a turn-table and connecting tracks, was not, by reason of such duties, employed in the operation of the railroad, within the meaning of section 1307; and that, for an injury received by him while performing such duties, and through the negligence of a coemployé, he could not recover against the company, although he might have had other duties to perform which did pertain to the operation of the road.

It was held, in *Luce* v. *Chicago, St. Paul &c. Railroad*, 67 Iowa, 75, that a person employed in a coal-house of the

railroad, and injured by the negligence of a coemployé while loading coal upon a car, could not recover from the company under section 1307, because the injury was not in any manner connected with the use and operation of the railway.

In *Matson* v. *Chicago, Rock Island &c. Railway*, 68 Iowa, 22, the plaintiff was a member of a construction gang on the road, and his duties required him to ride upon, and to work upon and about, the company's cars and tracks. He was injured by the negligence of a coemployé in throwing a heavy stone upon his hand, while he was engaged in placing stones under the ends of the ties. It was held that the injury was not connected with the use and operation of the railway, as contemplated in section 1307, and that the company was not liable.

It was held, in *Stroble* v. *Chicago, Milwaukee &c. Railway*, 70 Iowa, 555, that a person whose sole duty it was to elevate coal to a platform convenient for delivering it to the tenders of engines, was not employed in the use and operation of the railway, within section 1307, because he was in no way concerned with the moving and operation of trains.

In *Pierce* v. *Central Iowa Railway*, 73 Iowa, 140, a mechanic from a shop of the company was working, under orders, upon a ladder which leaned against one of the cars of a train. The train-men moved the train backward, without notice to him, the ladder fell, and he was injured. It was held that the negligence, whether that of the train-men or of the foreman in not giving the requisite information to the train-men, was connected with the use and operation of the railway, and was the negligence of some one employed on it, so as to make the company liable, under section 1307, for the injury sustained by the plaintiff, and this although he was not engaged in the operation of the railway.

It was held, in *Nelson* v. *Chicago, Milwaukee &c. Railway*, 73 Iowa, 576, that the working, on the railway, of a ditching machine which was operated by the movement along the track of the train of which it formed a part, was an employment connected with the use and operation of the railway, within the meaning of section 1307, and made the company liable for

injury to an employé through the negligence of a coemployé, although the plaintiff was not engaged in the actual movement of the train, but was only one of the crew necessary for the performance of the work intended to be done by the train and its machinery and appliances.

In *Rayburn* v. *Central Iowa Railway*, 74 Iowa, 637, the plaintiff and others were section-hands of the company, engaged in removing snow and ice from the track, when a train of cars loaded with slack came along, moving slowly, and the conductor and others in charge of the train directed them to get upon the train to unload the slack. They requested that the train be stopped, but were told that if it was stopped it could not be started again. In attempting to obey the order, the plaintiff was thrown down by a jerk of the train and injured. It was held that he was not precluded from recovering against the company under section 1307, on the ground that the negligence complained of was not connected with the use and operation of the railway.

From this statement of the decisions of the Supreme Court of Iowa, we are clearly of opinion that, in the present case, the defendant was liable, under section 1307 of the Code, for the injury to the plaintiff caused in the manner set forth in the petition, and in the evidence contained in the bill of exceptions. The plaintiff was upon a moving car propelled by hand-power. The movement of the car, its speed, the position of the plaintiff upon it, and the duties he had to discharge in that position, were under the direction of the foreman, who was upon the same car. The injury was directly connected with the use and operation of the railway, in whose common service the foreman and the plaintiff were, and they were coemployés. The injuries to the plaintiff were, by the petition and the evidence, sought to be attributed to the smallness of the hand-car, its being over-crowded, the failure to provide it with contrivances for removing snow from the track, the absence of a proper brake, the want of foot-rests, and the arrangement of the cattle-guard. The railway was being used and operated in the movement of the hand-car, quite as much as if the latter had been a train of cars drawn by a

locomotive. If a single locomotive be on its way to its engine-house, after leaving a train which it has drawn, or if it be summoned to go alone for service to a point more or less distant, and, in either case, by the negligence of one employé upon it, another employé is injured, the injury takes place in the use and operation of the railway, under section 1307, quite as much as if it takes place while the locomotive is drawing a train of cars. This we understand to be the manifest purport and effect of the decisions of the Supreme Court of Iowa on the subject, as well as obviously the proper interpretation of the statute.

But, although this is so, we are of opinion that a new trial must be granted, on account of errors in the exclusion of evidence offered by the defendant.

At the trial, one Jerry Artery, a brother of the plaintiff, was called as a witness by him. He was on the hand-car with the plaintiff at the time of the accident and saw all that occurred. He testified as to the speed of the car, and as to its size and its cramped and crowded condition, and as to the fact that there was nothing on it in front upon which the plaintiff could rest his feet while he was holding the shovel, and as to the arrangement of the cattle-guards. In the course of his cross-examination, the following proceedings occurred:

"Q. On the 23d of March, 1886, at Harper's Ferry, in the presence of Mr. Buell, did you sign a written statement, stating what you knew about this case and about the accident to your brother, after the written statement had been read over to you? A. Yes, sir. Q. I will show you now the written statement and ask you whether that is your signature? Written statement shown the witness hereto attached and marked Exhibit A. A. That is my signature there. Q. In the written statement which I have just shown you you state as follows: 'At the time Jim got hurt we were running from 4½ to 5 miles an hour — certainly not to exceed 5 miles.' Is that statement correct? Objected to by plaintiff; objection sustained.

"The grounds upon which the court sustained the objections to interrogatories to this and other witnesses, based upon

a written statement signed by the witness, and to the intro-
duction of the written statements themselves, were, that it
appeared that the statements were not volunteered by the wit-
nesses, but that the company had sent its claim agent, after
the happening of the accident, to examine the employés of
the company who were present at the time of the accident,
in regard to the transaction; that the statements made by
the witnesses were not taken down in full, but only a synopsis
thereof made by the agent, the correctness of which is ques-
tioned by the witnesses in some particulars, although such
written statement was signed by the witness; that, upon the
trial of this case, these statements, thus obtained, were sought
to be used not alone as a means of impeaching the witness,
but as evidence of the matters therein recited; that it is appar-
ent to the court that, whether so intended or not, these state-
ments become a ready means of confusing and intimidating
witnesses before the jury, and that, if it be permitted to par-
ties to thus procure written statements in advance from wit-
nesses, and then use the same in examining such witnesses,
it will enable parties to shape and control the evidence in a
cause by committing the witnesses to particular statements,
couched in the language not of the witness, but of the person
carrying on such *ex parte* examination; that these growing
abuses can only be prevented by entirely excluding such state-
ments, thus procured, from being introduced in evidence for
any purpose; that, if the party desired to impeach a witness
by showing contradictory statements made by him, the per-
son to whom or in whose presence such alleged contradictory
statements were made should be called as a witness, so that
opportunity might be afforded of placing before the jury the
statements actually made by the witness sought to be im-
peached, and not a mere synopsis thereof made by another
person, and the accuracy of which, in some particulars, was
challenged. Exception by defendant."

The following further proceedings took place on the cross-
examination of the same witness: "Q. On the occasion I have
referred to, did you make this statement: 'Six men on a hand-
car have plenty of room. We often have had 8 and 10 men

on a hand-car of the same size'? Objected to by plaintiff; objection sustained; exception by defendant. Q. Did you, on the occasion I have referred to, at Harper's Ferry, say as follows: 'I am a larger man than Jim ever was, and my legs are a great deal·longer. I have never had any trouble in keeping my feet up when I sat on the front of the car'? Objected to by plaintiff; objection sustained; exception by defendant. Q. On the occasion referred to, did you state as follows: 'If a man is holding a shovel on the rail and he is sitting·on the front of a hand-car there is no way for him to get hurt unless he forgets himself and lets his feet drop down'? Objected to by plaintiff; objection sustained; exception by defendant. Q. On the occasion referred to, did you state: 'The hand-car was in good condition, nothing broken about it in any way. It was an ordinary car, full size'? Objected to by plaintiff; objection sustained; exception by defendant. Q. Did you, on the occasion referred to, state as follows: 'I am foreman at present on section No. 20. The top of the ribbons on the ties of the cattle-guard was about level with the ball of the rail'? A. Well, sir, I don't remember whether I did or not say that. Q. If you did say that, was it the truth or not? Objected to by plaintiff; objection sustained; exception by defendant."

Subsequently, while the defendant was putting in its evidence, the bill of exceptions says: "Thereupon the defendant offered in evidence, for the purpose of impeachment, the statement under date of March 23, 1886, shown the witness Jerry Artery, and hereto attached, marked Exhibit A, which, on objection by plaintiff, was ruled out by the court; to which ruling the defendant at the time excepted." The court, in sustaining the objection, stated that it deemed the proper method to be to produce the person to whom the alleged statement was made, and to prove by him what the witness may have said on the occasion. Exhibit A, thus referred to, is a paper signed by the witness, and contains the statements set forth in the six questions thus excluded, as above.

That the evidence covered by the six questions was material to the issue, is apparent. They related to the speed of the

car, to the question of its size and whether it was crowded or not, to the question whether the plaintiff could have kept up his feet without a foot-rest, and to the question of the condition of the cattle-guard.

It is an elementary principle of the law of evidence, that if a witness is to be impeached, in consequence of his having made, on some other occasion, different statements, oral or written, from those which he makes on the witness-stand, as to material points in the case, his attention must first be called, on cross-examination, to the particular time and occasion when, the place where, and the person to whom he made the varying statements. In no other way can a foundation be laid for putting in the impeaching testimony.

In the present case, it is apparent that the views of the court, as set forth in the bill of exceptions immediately after the exclusion of the first question which is above stated to have been excluded on the cross-examination of the witness Jerry Artery, must have been founded not only upon what had at that time transpired, but also upon the subsequent proceedings at the trial, and were the views of the court upon additional and kindred questions which arose in the case, because, at the time such first question was asked upon cross-examination and excluded, it had not yet appeared in evidence under what circumstances the written statement was made by the witness. Moreover, it was stated by the court that the written statements of the witnesses " were sought to be used not alone as a means of impeaching the witness, but as evidence of the matters therein recited;" whereas, when the statement signed by the witness Jerry Artery was offered in evidence and excluded, it was distinctly offered "for the purpose of impeachment," and it is not otherwise stated in the bill of exceptions that it was offered for any other purpose; and, in excluding it, the court excluded it as so offered.

We think the Circuit Court erred in laying it down as a rule, that a written statement signed by a witness and admitted by him to have been so signed cannot be used in cross-examining him as to material points testified to by him; and in announcing it as a further rule, that the only way to im-

peach a witness by showing contradictory statements made by him, is to call as a witness the person to whom or in whose presence the alleged contradictory statements were made. The foundation must be first laid for impeaching a witness, by calling his attention to the time, place and circumstances of the contradictory statements, whether they were in writing or made orally; and the court, in the present case, excluded that from being done.

The written statement having been presented to the witness, and he having admitted that what purported to be his signature to it was his signature, it was perfectly open to him to read it, and he could have been inquired of as to the circumstances under which it was taken down and signed, so as to advise the jury as to its authenticity and the credit to be given to it. The bill of exceptions does not show that the plaintiff's counsel asked the witness to read the statement, or asked the court to have it read to him, or that the witness did not read it, or did not have it read to him. The exclusion of the first question put to him and excluded, namely, "Is that statement correct?" did not refer to the entire written statement, but to the statement in it as to the speed at which the car was running. That inquiry was directly pertinent to the issue that was being tried.

The rule of evidence invoked by the plaintiff, and laid down in *The Queen's Case*, 2 Brod. & Bing. 284, 288, is, that if, on cross-examination, a witness admits a letter to be in his handwriting, he cannot be questioned by counsel as to whether statements, such as the counsel may suggest, are contained in it, but the whole letter must be read as the evidence of the existence of the statements. This principle is not applicable to the present case, because the plaintiff did not take the objection that the whole statement was not, but should have been, read as evidence; and the court, with the assent of the plaintiff, excluded it from being read in evidence.

The case of *Vicksburg & Meridian Railroad* v. *O'Brien*, 119 U. S. 99 is not in point. In that case, which was a suit against a railroad company to recover for personal injuries received by an accident to a train, a written statement as to

the nature and extent of the injuries, made by the plaintiff's physician while treating him for them, was held not to be admissible as affirmative evidence for the plaintiff, even though it was attached to a deposition of the physician, in which he swore that it was written by him and that it correctly stated the condition of his patient at the time referred to. The question was not one which arose on the cross-examination of a witness or in regard to his impeachment.

Nor was the present case one involving the well-established proposition, that incompetent questions are not allowable on cross-examination in order to predicate upon them an impeachment or contradiction of the witness.

*The judgment is reversed, and the case is remanded to the Circuit Court, with a direction to grant a new trial.*