ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
*v.* FAISST.

Opinion delivered December 1, 1900.

1. APPEAL—BRINGING MATTERS INTO RECORD.—Where appellant's counsel desired to impeach a witness for appellee by proof of a contradictory written statement, and embodied in the record so much of the statement as he desired to call to the witness' attention, the question whether the court erred in refusing to permit those portions of the written statement to be read to the jury is sufficiently raised, though the entire statement is not copied into the record.   (Page 592.)

2. WITNESS—IMPEACHMENT—CONTRADICTORY STATEMENT.—When a witness has testified to material facts on the trial of a cause, his previous statements inconsistent with his testimony are competent by way of contradiction, and to enable the court or jury trying the case to ascertain what weight should be given to his testimony.   (Page 594.)

3. SAME—PRACTICE AS TO IMPEACHMENT.—Where a party desires to impeach a witness by proof of a prior contradictory writing, the practice generally is to lay the foundation on cross-examination by showing the witness the writing and asking if he signed it, and then to abide his turn for the introduction of proof; but if the witness admits his signature, and the party desires to cross-examine him as to the contents of the writing, the proper practice is to have it read to the jury then and there.   (Page 594.)

4. SAME—DISCRETION OF COURT.—Where a party neglected to introduce a contradictory written statement during his cross-examination of the witness who made it, it is in the discretion of the trial court to refuse him permission to inject it during the cross-examination of another witness.   (Page 595.)

5. SAME—IMPEACHMENT—CONTRADICTORY AFFIDAVIT.—An affidavit which a witness admits having signed, though written down by another, is admissible in impeachment of his testimony, if contradictory thereof, though he denies that he made the statements therein contained, and the party before whom the affidavit was made was not introduced to support the affidavit.   (Page 597.)

6. APPEAL—ERROR PREJUDICIAL WHEN.—Error of the court in refusing to permit the affidavit of a witness to be introduced to impeach his testimony cannot be said to be harmless, although the witness admitted having signed the affidavit, and that it contained a statement contradictory of his testimony.   (Page 599.)

7. DOCUMENTARY EVIDENCE—OFFER.—Where two documents are offered in evidence, it is error to exclude both because one of them is inadmissible.   (Page 599.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Dodge & Johnson*, for appellants.

The burden of proof is upon plaintiff to show negligence. 2 Shear. & R. Neg. § 676; 49 Ark. 535; 33 Ark. 816; 59 Ark. 112; 30 Wis. 55; 75 Vt. 499; 54 Pa. St. 345; 52 Pa. St. 379; 43 S. W. 431; 37 S. W. 779. It was a sufficient defense to show that the spark arresters were in good order. 29 S. W. 860; 31 S. W. 319; 3 Elliott, Railroads § 1245; 29 S. W. 860; 91 Wis. 447; Wood, Ry. Law, 1576–1581. The defense was complete, in the absence of proof contradicting it. 60 Fed. Rep. 39. The fire was not the result of negligence. 141 Ind. 661; 25 S. W. 971; 31 S. W. 319; 143 N. Y. 182; 43 N. Y. 123. A railway company is only required to use such contrivances as have already been tested and put in use. Pierce, Railroads, § 433, note 4; 50 Pac. 456. It was error to permit the jury to pass upon the question as to proper equipment and condition. 33 Wis. 582; 34 Wis. 315; 54 Wis. 619; 55 Wis. 106; 33 Ill. App. 565; 101 Ga. 747; 38 S. E. 710. Unimpeached evidence cannot be arbitrarily disregarded. 51 S. W. 319; 3 N. D. 17. Uncontradicted proof that all possible precautions were taken to avoid the injury exonerates the defendant from liability. 21 Fla. 669; 74 Ala. 150; *Ib.* 113; 59 Miss. 280; 85 Ala. 208; 83 Ga. 9; 78 Ga. 714. The burden was upon the plaintiffs to show by a preponderance of evidence that the fire originated with the defendant's locomotive. 109 Ala. 509; 65 Minn. 112; 94 Wis. 270; 29 Barb. 226; 86 Wis. 466; 9 Nev. 296; 45 Mo. 327; 13 Am. & Eng. R. Cas. 487; 56 Ark. 520. If probabilities are evenly balanced, the plaintiff cannot recover. 99 Mass. 605; Will's Circ. Ev. 158; 50 N. W. 365; 74 N. W. 561; 91 Ky. 526; 101 N. Y. 661; 128 N. Y. 107. Plaintiff must show by reasonable evidence that the fire originated from defendant's locomotive. 10 Am. & Eng. R. Cas. (N. S.) 160; 75 N. W. 1114; 14 Am. & Eng. R. Cas. (N. S.) 82. The affidavits of witnesses Ulmer, Hendricks and Finley should have been admitted in evidence. Sand. & H. Dig., § 2959; 30 S. W. 856; 151 U. S. 154; 53 Fed. Rep. 1001.

*J. W. Westbrook, D. M. Cloud, Murphy & Mehaffey*, for appellees.

Uncertain circumstantial evidence is sufficient in civil cases. 1 Greenl. Ev. 23. The verdict is conclusive upon the question of negligence. 49 Ark. 535; 63 Ark. 636; 178 Pa. St. 367; 34 L. R. A. 577; 17 L. R. A. 33; 9 L. R. A. 824. Where all possible precautions are taken to avoid injury, the defendant is not exonerated from liability. 25 L. R. A. 161. The failure of the watchman to discover the fire does not excuse the appellant. 55 Ark. 163; 17 L. R. A. 33.

*Dodge & Johnson*, for appellant, in reply.

When contradictory statements are offered for the purpose of impeaching a witness, the proper foundation should be laid on cross-examination. 24 S. W. 518; 34 Ia. 533; 19 Ia. 448. The foundation having been laid, it is competent to impeach a witness by putting in evidence any material statement in contradiction of his testimony, which may have been reduced to writing by him or subscribed by him. 10 Enc. Pl. & Pr., § 291. Our statute is but an adoption of the common-law rule. 1 Greenl. Ev., § 462; Sand. & H. Dig., § 462. The statements should have been admitted as proof of the cross-examinations of witnesses who signed them. 1 Greenl. Ev. § 462; 53 Minn. 539; 79 Cal. 452; 133 Mo. 5, 6; 146 Mass. 607; 53 Fed. Rep. 1005; 76 Fed. Rep. 254; 96 Mo. 85.

*Murphy & Mehaffey*, for appellees, in reply.

It was not error to exclude the affidavits or statements in writing at the time the same were offered in evidence. 1 Greenl. Ev. § 463; Phill. Ev. (4th Am. Ed.) 964; 8 Enc. Pl. & Pr., 217–218, note 1, 236; 17 So. 187; 48 Ark. 182; 15 Ark. 348; 3 Enc. Pl. & Pr. 428. Every presumption is in favor of the correctness of the court's ruling. 2 Enc. Pl. & Pr. 418–20–21, 444–475; 3 Enc. Pl. & Pr. 409–14. If the error consists in the admission or rejection of evidence, such evidence must be set out in the bill of exceptions. 2 Enc. Pl. & Pr., 475–6, and note 1, 477; 8 Enc. Pl. and Pr., 217–18, note 1, 220–23; 3 Enc. Pl. & Pr., 427, and note 2; also note on 428; 52 N. W. Rep. 283; 49 N. W. Rep. 1066; 24 S. W. Rep. 518.

*Dodge & Johnson,* for appellants; additional reply.

A presumption should always be based upon a fact, and should be a reasonable deduction from such fact. The law does not allow presumptions of fact from presumptions. 92 Pa. St. 431; 29 Barb. 226; 86 Wis. 446; 9 N. W. 296; 45 Mo. 327; 13 Am. & Eng. R. Cas. 487. The appellant's showing of proper equipment and proper handling of its locomotive is conclusive against its liability for the injury. 178 Pa. 367; 17 L. R. A. 33; 9 L. R. A. 824.

WOOD, J. This suit was brought by B. Faisst & Co., a firm composed of B. Faisst and others, to recover damages for the burning of a mill and other property, alleged to have been negligently caused by sparks from an engine of the railway company. There was a judgment in favor of plaintiff for $17,622.25, from which this appeal was taken.

On the trial witness Ulmer testified, among other things, "that he saw the passenger train go north, and that it was throwing fire, as they usually do, and it was all going over towards the mill. The air was carrying it from the track towards the mill. The train was throwing fire enough to set anything afire, like they do in the day time. The sparks looked to be as big as the end of your finger." On the cross-examination of this witness he was shown an affidavit, and the record as to what took place concerning it is as follows:

"Q. Is that your signature? A. Yes, sir. Q. You signed that, didn't you? A. Yes, sir. Q. You swore to it before Mr. Mashburn, notary public, didn't you? A. Yes, sir. Q. Didn't you state in that connection, 'I didn't see any sparks flying from the engine?' A. No, sir; I did not. Q. You signed that statement, didn't you? A. No, sir; I didn't know about that. Q. You signed that? A. Yes, sir. Q. Was that read to you when you signed it? A. The man that wrote that out read it to me; I couldn't read it. Q. He read it to you? A. I didn't tell him, though, that I didn't see no sparks. Q. You saw that statement, 'I saw no sparks flying from the engine?' A. No, sir; I didn't tell him any such thing. Q. It is there, isn't it? Can you read? A. No, sir; I didn't say any such thing at all. Q. This statement was taken down, or at

least a statement was taken down and read over to you, and you signed it? A. He read it over, but I know that wasn't in it when he read it over. I know that much. Q. Did you know you signed that statement? A. Yes, sir; that is my hand-write. Q. Did you sign it before notary public Mashburn? A. No, sir; I signed it in the depot. Q. Didn't you swear to it? A. Yes, sir. Q. Did you go before him and swear to it? A. Yes, sir."

Witness Hendricks testified, among other things, that he was awake when the passenger train came north, and noticed the sparks being thrown out from the locomotive as it passed. They were of unusual size, and seemed to be a great many. He did not notice any fire at the mill before the passing of the train; noticed the fire sometime near two o'clock, after the passenger train had gone north. The record shows the witness was asked this question, to-wit: "Well, when you noticed the mill burning, what portion of it was burning?" The answer was as follows, to-wit: "The west end; what I call from where I live the west end of the main lumber shed. It had burned the entire west end of the main lumber shed. This was afire, and had burned to half way up the east end." On cross-examination of this witness the record shows the following: "Q. Didn't you state to Mr. Faulkinbury, when he took your statement, that the first you knew of that fire the whole west end of the mill was afire? A. No, sir. Q. You made a statement to him? A. Yes, sir. Q. You never said a word about these sparks from the engine at that time? A. He didn't ask me at that time. Q. You made no statement about it? A. Yes, sir; I made a statement in regard to the sparks on the train. Q. You think now you made a statement to him? A. I know I did. Q. Didn't you state to him and wasn't that statement taken down in writing, that 'when I first discovered the fire, all of the west end of the mill was in flames, and it burned very rapidly all over the entire building; so fast nothing could be saved,' signed by G. T. Hendricks? Is that your signature? A. Yes, sir. Q. Didn't you make that statement? A. I did not. Q. Did you sign this? A. I did. Q. Was it read over to you? A. No, sir.

Q. Did you ask it to be read over to you?   A.   No, sir.   Q. Did he take the statements as you made them?   A.   He took it down as I made them."

Defendant here asked to be allowed to read to the jury those parts of the affidavits of A. B. Ulmer and G. T. Hendricks to which attention has been called, but the court refused to allow same to be read, to which refusal the defendant saved its exceptions.

Does the record raise the question as to whether or not the trial court erred in refusing to permit to be read to the jury those portions of the affidavits or written statements of witnesses Ulmer and Hendricks to which their attention had been called? Such question was treated as raised in the original brief of counsel for appellee. There is no intimation or suggestion there that the record does not properly raise the question. But, upon a careful reading of the transcript by one of the judges of this court, it was suggested that there might be some question as to whether the bill of exceptions really presented the alleged error of the ruling of the court below in rejecting the parts of the affidavits offered in evidence, so as to call for the judgment of this court upon such ruling. Whereupon the matter was deemed of such importance that the propriety of a brief upon the point by the respective counsel was suggested, and accordingly briefs have since been prepared. We must determine, therefore, *in limine* whether the question is raised. The record shows that each of the witnesses was shown an affidavit or written statement which he admitted having signed. The attention of each witness was called to certain parts of the writing which he had signed, and those parts were read to him by the appellant's counsel, and he was asked if he did not make that statement. The parts of the affidavit which counsel desired to introduce are set forth specifically in the record, and designated by quotation marks as the parts taken from the affidavit which the witness had signed. Then, when the record recites that defendant "asked to be allowed to read to the jury those parts of the affidavits of A. B. Ulmer and G. T. Hendricks to which attention had been called," it certainly sufficiently designates and sets forth the testimony

that was offered, and which the court refused to allow to go to the jury. It does not appear that there were any other parts of affidavits to which the attention of the witnesses had been called. Useless repetition is to be avoided. After identifying parts of the affidavits offered in evidence by quotation marks (setting them forth *verbatim*), it would have been an idle waste of words and space to have repeated them. Unless we close our eyes, it would be impossible for us not to read from the above record the precise parts of the affidavits of the respective witnesses that were offered and refused. The record, then, meets the requirement of the rule that where the alleged error consists in the admission or rejection of evidence, such evidence must be set out in the bill of exceptions.

It must be remembered that the purpose in view was the impeachment of these witnesses by showing that they had made statements different from their present testimony. It was unnecessary, therefore, and would have been manifestly improper, to offer the whole of the affidavit in evidence when only portions of it were contradictory of the witness' present testimony. Only such parts as were contradictory of his present testimony were relevant on the question of impeachment. § 2960, Sand & H. Dig. It was not claimed that the whole of the affidavit was contradictory. Appellant was not seeking to establish by the affidavits, as original evidence, any fact involved in the main issue. No question as to the contents of the affidavits was involved. Only the question of the credibility of the witness was raised. It was the province of appellant to offer only those parts of the affidavits which it conceived to be contradictory. If appellee had contended that there was no inconsistency in the statements, past and present, of its witnesses, when their respective affidavits were considered as a whole, then its province and duty was to object specifically to the reading of a part of the affidavits only, and to call for the reading of the whole. 1 Greenl. Ev. §§ 201, 462b; *Chicago, M. & St. P. Ry. Co.* v. *Artery*, 137 U. S. 507. The record discloses no such objection and demand of appellee. Therefore it is only necessary for the record to identify those parts of the affidavits which appellant asked to read in order

to raise the question of the correctness of the ruling of the circuit court in refusing such request. Having determined that the record calls for a review of the ruling of the trial court, the next question is, did the court err?

It is a well-established rule that when a witness has testified to material facts on the trial of a cause, any acts done or declarations made by him, which appear to be inconsistent with his statements on the stand, are competent by way of contradiction, and to enable the court or jury trying the case to ascertain what weight should be given to his testimony. *Handy* v. *Canning*, 166 Mass. 107. As witness Ulmer testified that when he saw the train go north it was throwing fire which was all going towards the mill, and was throwing fire enough to set anything afire, and that the sparks emitted "looked to be as big as the end of your finger," his testimony was exceedingly important in establishing the plaintiff's case; and, as he had previous to the trial signed an affidavit which contained the statement, "I didn't see any sparks flying from the engine," it was patent that there was a palpable contradiction between the statement contained in his affidavit and the testimony he gave upon the trial upon the most material point in the case.

The statement contained in the affidavit was, therefore, clearly competent, and should have been admitted, if offered at the proper time. "According to the ordinary rule of proceeding in such cases," says Greenleaf, "the letter is to be read as the evidence of the cross-examining counsel in his turn when he shall have opened his case; but if he suggests to the court that he wishes to have the letter read immediately, in order to found certain questions upon its contents, after they shall have been made known to the court, which otherwise could not well or effectually be done, that becomes an excepted case; and for the convenient administration of justice the letter is permitted to be read as part of the evidence of the counsel so proposing it, subject to all the consequences of its being considered." 1 Greenleaf, Ev. § 463.

The supreme court of Minnesota, discussing a question of this kind, said: "If a party desires to show the contents of a paper, and to cross-examine upon it, he must, if the writing be

admitted, introduce it as a part of his cross-examination."
*O'Riley* v. *Clampet*, 53 Minn. 539. The rule of practice which
generally obtains is to require the party who desires to impeach
a witness by prior contradictory written statements to simply
lay the foundation on cross-examination by showing the witness
the writing and asking if he signed it, then to abide his turn
for the introduction of his own proof before offering the writing
in evidence. *State* v. *Stein*, 79 Mo. 330; *Romertze* v. *Bank*, 49
N. Y. 577. But, as shown by Prof. Greenleaf and the other
authorities, *supra*, the exception, for the convenient and
orderly administration of justice, is to have the writing, where
the signature is admitted, read then and there to the jury, pro-
vided a cross-examination upon the contents is desired and
suggested to the court. For this gives the witness the oppor-
tunity then and there to make such explanation as he may
desire, and it obviates the necessity of calling him again upon
the stand, should a cross-examination upon the contents be
desired. The exception is quite as well established as the rule
itself. But there is no exception unless the cross-examiner
suggests to the court that he desires to cross-examine the
witness while on the stand as to the contents of the writing.
Here the counsel proceeded on cross-examination, without in-
terruption or interference by the court, to cross-examine witness
Ulmer on the contents of his affidavit. No more forcible sug-
gestion of a desire to cross-examine on the contents of the
writing could have been made than by proceeding to do that
very thing. The fact that it was done is tantamount to per-
mission asked and leave granted for so doing. As a matter of
fact, however, counsel for appellant did not offer to read the
portions of Ulmer's affidavit while he was on the witness stand
and being cross-examined, but postponed the request to read
from his affidavit until the close of the cross and re-direct ex-
amination of witness Hendricks. This was out of time as to
Ulmer, and the reasons for allowing the writing to be read
during the cross-examination, therefore, did not exist in his
case. It cannot be said that the trial court, having a large
discretion as to the order in which evidence shall be admitted,
which will not usually be controlled by this court, in any

manner abused his discretion in not permitting the reading from the affidavit of Ulmer at this juncture of the proceedings. Appellant, having neglected to avail itself of the rule allowing the writing to be read during the cross-examination of the witness, might well be denied the privilege of injecting it during the cross-examination of some other witness. When appellant's time came to introduce its evidence, it did not make the request to have the alleged contradictory writing read, which would have been in order. As the trial court had no opportunity, therefore, to rule upon the question when presented in due and proper time, no error is shown. We are to presume that if the request had been seasonably made it would have been granted.

It follows from what we have said that the court should have permitted the reading of the alleged contradictory statement from the affidavit of the witness Hendricks, provided there is any statement whatever in it legally sufficient to warrant a jury in finding that such statement is inconsistent with his testimony on the trial. Primarily, the lower court must determine whether there is any evidence at all of a contradictory nature. If there be, the question is then for the jury, and the alleged contradictory evidence should be admitted.

On the trial witness Hendricks was asked, "Well, when you noticed the mill burning, what portion of it was burning?" The answer was, "The west end; what I call from where I live the west end of the main lumber shed. It had burned the entire west end of the main lumber shed. This was afire, and had burned to half way up the east end." The part of the affidavit set out in the record which appellant asked to read to contradict the witness is as follows: "When I first discovered the fire, all of the west end of the mill was in flames, and it burned very rapidly all over the entire building, so fast nothing could be saved." Witness, when asked if he did not make the above statement, answered: "I did not." He had just acknowledged, however, his signature to the writing which contained the above statement. He said also that Faulkinbury took down the statements as he made them. Having admitted signing the writing containing the alleged contradictory state-

ment, it was then a matter for the jury to determine as to whether the writing contained the statement at the time witness signed same or not. If the writing which he signed really contained the alleged contradictory statement at the time he signed it, and same was not misread to the witness when he signed it, then his present testimony was in direct conflict with the prior written statement, and such contradiction would tend strongly to impeach him.

It is argued that, as the witness admitted that the alleged contradictory statements were in the affidavit when presented to him on the witness stand, but denied that they contained such statements, or that such statements were read to him when he signed the affidavit, therefore the ruling of the circuit court was proper, because appellant did not offer the testimony of the party before whom the affidavit was made or other witness to support the affidavit. The failure to make such proof might have lessened the weight to be attached to the contradictory statements, but it could not effect the competency of such evidence. By admitting the signature to the writing, the witness must be considered, *prima facie*, at least, as having made the statements therein contained; and his denial of any knowledge of the alleged contradictory statement, or that they were in the writing when he signed same, was itself contradictory of what he had just admitted, and thus raised a question vitally affecting his credibility, which was the point of inquiry. If the writing bore no evidences of alterations or interlineations, and appeared as having been written all at the same time, in the same hand, etc., what better evidence could there have been tending to show the contradiction of the witness' present testimony? But how could the jury know about this without an inspection of the writing? The writing having been excluded, appellant, if it had desired, could not thereafter have been allowed to introduce the one who wrote it and the officer who administered the oath to show that the writing did indeed contain, at the time it was signed and sworn to, what it now contains, and thus corroborate and strengthen the proof of contradiction. The court, after having permitted cross-examination on the contents of the writing, and then, when same was offered at the proper time, having excluded it, must have

done so for the reason that he considered such writing irrele--
vant or incompetent.   Without any suggestion to the contrary,
appellant had the right to assume, under the circumstances,
that such was the view of the court, and hence it was not in-
cumbent upon it to offer it again when it had opened its case.

Furthermore, there is a variance between the statement in
the writing offered in evidence and that made by the witness
upon the stand as to the portion of the property he first dis-
covered on fire.   This difference was sufficient to entitle appel-
lant to have the writing put before the jury for the purpose of
impeaching him.   It at least made it a question for the jury to
say whether or not this witness was impeached by contradictory
statements.   The plaintiff was endeavoring to show that the
mill and property were fired by a spark from defendant's
engine.   The testimony of Hendricks tended to show that the
portion he first saw burning was the west end of the main
lumber shed.  When asked what portion of the mill he first saw
burning, he answered, to quote his exact language, "The west
end; what I call from where I live the west end of the main
lumber shed.   It had burned the entire west end of the main
lumber shed, and had burned to half way up the east end."
This testimony was well calculated to make the jury believe
that the fire originated in the west end of the main lumber
shed.   This lumber shed was situated, according to the scale
of distance on the plat made part of the record, within some
fifteen or twenty feet of the railroad track where the train had
passed.   There had been no fire at all about that part of the
property during that day, and from the direction of the wind,
the amount and size of the sparks, and the proximity of this
lumber shed to the railroad track, the jury might well have
concluded that if the fire originated in the lumber shed the
sparks from the engine produced it.   Indeed, this would have
been the most natural conclusion from the testimony of witness
Hendricks, conceding it to be true, and it was very material.
On the other hand, if the fire originated at the west end of the
mill, which was some eighty or one hundred feet from the rail-
road track, and nearer to the kilns and nearer to the shaving
house and engine house of the mill where there had been fire

on the day of the night of the fire, then there was less probability that the fire originated from the engine of the railway, and more reason for the contention of the railway company that the fire originated in some other way than by a spark from its engine. Now, the witness stated simply in the affidavit that "when I first discovered the fire, all of the west end of the mill was in flames, and it burned very rapidly all over the entire building; so fast nothing could be saved." This statement was without explanation or qualification, and might have been taken by the jury as meaning the "west end of the mill" and not the "west end of the main lumber shed," the two being entirely different. So that the jury might have concluded that there was a decided contradiction of the witness on a most material point. The court therefore erred in not permitting the reading of the alleged contradictory statement.

Nor can we say, as matter of law, that, because the witness admitted signing the affidavit, and admitted on the stand that the affidavit contained the contradictory statement, therefore appellant was not prejudiced by the ruling. By not permitting it to be read as evidence, the jury were prevented from examining the writing. The appellant was deprived of the right to have it considered as evidence in the case, and its counsel could not refer to or discuss it in their argument. All of this was exceedingly important to appellant, and the ruling of the court refusing it was prejudicial error.

The contention that the court did not err in refusing the request to read from the affidavit of Hendricks, because it was joined with the request to read from the affidavit of Ulmer is not well taken. The authorities cited to show that where any part of the evidence is admissible a general objection is not available are not applicable here; for, although the request of appellant to be permitted to read from the affidavits of each of these witnesses was made at one and the same time, it was a request for two separate and specific things, the one having no connection with the other. The attention of the court in the request was called to each specific affidavit that appellant desired to read from by name. The court could not have been misled, and must have known that in refusing the request it

was passing upon the admissibility of each one of the affidavits for the purpose of impeachment. The affidavits were not joint. They could not be read at the same time. The court should therefore have admitted the one properly offered and rejected the other. .

We find no other error. But for this the judgment must be reversed, and the cause remanded for a new trial.

. BATTLE and RIDDICK, JJ., dissent.