## SULLIVAN v. UNITED STATES.

Circuit Court of Appeals, Ninth Circuit.
September 4, 1928.

No. 5317.

James M. Hanley and N. C. Coghlan, both of San Francisco, Cal., for plaintiff in error.

George J. Hatfield, U. S. Atty., T. J. Sheridan, Asst. U. S. Atty., and George M. Naus, Asst. U. S. Atty., all of San Francisco, Cal.

Before RUDKIN, DIETRICH, and HUNT, Circuit Judges.

RUDKIN, Circuit Judge. Four persons were implicated in a mail robbery at San Francisco on April 7, 1924. Three of the parties thus implicated pleaded guilty to the charge and were sentenced to imprisonment in the United States penitentiary at Ft. Leavenworth, Kan., for a term of 25 years each. Later the plaintiff in error was indicted as the fourth party to the crime, and the present writ of error was sued out to review a judgment of conviction. About three weeks before the trial the three prisoners confined at Ft. Leavenworth signed a statement to the effect that each of them took some part in the mail robbery; that the plaintiff in error also took some part, driving the automobile used by the robbers a portion of the time; that the plaintiff in error received his portion of the stolen money, and that the prisoners desired to have a personal interview with the United States attorney before they were expected to testify. Statements of a similar import had previously been made by the prisoners to one or more of the post office inspectors.

During the progress of the trial, one of the prisoners was called as a witness for the government, and testified that he was a prisoner at Ft. Leavenworth, that he had pleaded guilty to the crime for which the plaintiff in error was on trial, that he never had any conversation with him, and that he did not see him at the time of the robbery. The attorney for the government thereupon stated to the court that he was taken completely by surprise by the testimony given by the witness and asked for an adjournment until afternoon. This request was granted, and at the afternoon session the attorney for the government was granted permission to cross-examine his own witness as to his previous statements, and was likewise permitted to call other witnesses to prove the previous statements made by the prisoner, implicating the plaintiff in error in the commission of the crime.

The other two witnesses were then called in succession, and each testified the same as the former witness, and each was subjected to cross-examination and impeachment in the same manner.

The admission of this testimony is the principal error assigned. The plaintiff in error contends that no foundation was laid for the impeachment of the witnesses by stating the time and place and persons present, while the defendant in error contends that the objection to the testimony was insufficient. Neither contention is well founded. While no proper foundation for the impeachment was laid, the record clearly shows that the witnesses fully understood the import of the questions asked and the statements and conversations referred to, and while the objection to the testimony in the first instance was general the court and counsel for the government fully understood the nature of the objection and the reason therefor.

Whether a party may impeach his own witness by proving by other witnesses contradictory statements attributed to him has been the subject of much diversity of opinion and the occasion for many statutes. In Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170, the court said:

"When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidentally tends to discredit the witness. As to witnesses of the other party, inconsistent statements, after proper foundation laid by cross-examination, may be shown (Chicago, M. & St. P. R. Co. v. Artery, 137 U. S. 507 [11 S. Ct. 129], 34 L. Ed. 747); but proof of the contradictory statements of one's own witness, voluntarily called and not a party, inasmuch as it would not amount to substantive evidence and could have no effect but to impair the credit of the witness, was generally not admissible at common law. Best, Ev. § 645; Whart. Ev. § 549; Melhuish v. Collier, 15 Q. B. 878.

"By statute in England and in many of the states, it has been provided that a party may, in case the witness shall in the opinion of the judge prove adverse, by leave of the

judge, show that he has made at other times statements inconsistent with his present testimony, and this is allowed for the purpose of counteracting actually hostile testimony with which the party has been surprised. Adams v. Wheeler, 97 Mass. 67; Greenough v. Eccles, 5 C. B. (N. S.) 786; Rice v. Howard, L. R., 16 Q. B. Div. 681."

In Sneed v. United States (C. C. A.) 298 F. 911, 914 (37 A. L. R. 772), the court said:

"That a party may freely contradict the facts testified to by his witness through other witnesses is beyond question. That he may not attack generally the character and integrity of a witness voluntarily produced by him is also established. He may call to the attention of his witness a previous statement to refresh his recollection, and if the witness appear to be hostile or unwilling, may be allowed to ask leading questions. * * * Whether, if the witness deny the contradictory statement attributed to him, he may be impeached to the extent of proving it, has been the subject of great diversity of opinion, and the occasion of many statutes."

█ But for the purpose of this case we may concede that when a party is taken by surprise by damaging testimony given by his own witness he may be permitted to prove contradictory statements made by the witness inconsistent with his present testimony, and we may likewise concede that a sufficient showing of surprise was made as to the first witness called. But with these concessions it must be held that the testimony of the two remaining witnesses was clearly incompetent. As said by this court in Kuhn v. United States, 24 F.(2d) 910, 913:

"While a party is not to be denied the right to attempt to prove his case by an unwilling witness, he is not permitted to get before the jury, under the guise of impeachment, an ex parte statement of such witness, by calling him to the stand when there is good reason to believe he will decline to testify as desired, and when in fact he only so declines."

Or, as said by the court in Zipperlen v. Southern Pacific, 7 Cal. App. 215, 93 P. 1053:

"It must be conceded that the rule authorizing the contradiction of one's own witness is, in its application, like the rule as to impeachment, attended with more or less danger of producing injustice, and, therefore, should never be invoked or allowed to be exercised by the court except where the exigencies of the situation and the circumstances of the alleged betrayal clearly

warrant it. * * * So, when the witness gives evidence which tends to destroy rather than build up the cause of the party who has presented him to the court and jury as a person possessing information valuable and material to his side of the controversy, the law steps in and says that no litigant should thus be placed at the mercy of such treachery, and authorizes the party to explain why he called him as a witness and thereby acquit himself of the otherwise disadvantageous imputation of contributing toward making out a case against himself. But a party, under the guise of the rule in question, will not be suffered to present to the jury mere hearsay declarations—declarations admissible neither under the rule of res gestæ nor as having been made in the presence and hearing of the party against whom they are offered."

Here there was no claim of surprise as to the last two witnesses, and the record affords no support to any such claim. The three prisoners had signed a joint statement at the penitentiary, thus indicating that they were acting in concert, and, when the first witness failed to identify the plaintiff in error, this was fair warning to the government that the other two witnesses would in all probability pursue the same course, as they eventually did. No effort was made to ascertain whether the other two witnesses would identify the plaintiff in error as one of the robbers, after the first witness had refused to do so, and the request by counsel for plaintiff in error that the witnesses be interrogated without the presence of the jury was ignored or refused. Counsel for the government state in their brief that they should not be required to accept the statement off the stand of a convict as to what his testimony will be, but if the witnesses were so untrustworthy as this the propriety of calling them at all is at least questionable. In any event a party cannot claim to be surprised by the testimony of a witness, when he has failed to make inquiry as to what the testimony will be before calling the witness to the stand.

█ The admission of the testimony of the last two witnesses was therefore error. Nor was the error without prejudice, even though the court instructed the jury that the hearsay testimony could only be considered for the purposes of impeachment. The testimony tending to connect the plaintiff in error with the commission of the crime consisted largely of admissions attributed to him from time to time after his arrest, and the hearsay evidence in question. The un-

satisfactory character of the former has been universally recognized and the incompetency of the latter is too apparent to admit of discussion. Nor was the hearsay based on mere idle rumor. It was first-hand information coming from parties who knew the facts. It was testimony upon which the government apparently acted in bringing the plaintiff in error back from England for trial; and it was testimony which the government now asserts was true. We all know from experience that juries not infrequently disqualify themselves because of information received out of court far less direct than this. Furthermore, it is apparent from the record that the testimony was offered for the sole purpose of improperly influencing the jury, and it now comes with ill grace to say that it did not accomplish that result.

Error is assigned in instructions given by the court and in the refusal to instruct as requested. No exceptions were taken to the charge of the court, and the requests, so far as proper, were embodied in substance in the general charge. We see no error in this regard, but for the error in the admission of testimony the judgment is reversed, and the case is remanded for a new trial.