## STEELE vs. PARSONS.

Parsons bought a tract of land from Gibson, for which he paid $50, and gave his note for $300. At the same time P. executed to G. a bond, conditioned to re-convey the land if G. should refund the $50, and deliver up the note, on a certain day. The note was fraudulently assigned by G., and while thus in equity belonging to G., Parsons was garnisheed on a judgment against G. After the garnishment the note and defeasance were assigned to Steele. This was a bill filed by Steele to compel Parsons to re-convey.

Held:

That Parsons being compelled to pay the judgment against him, as garnishee, the note in equity being the property of G. at the time of the garnishment, any subsequent transfer cannot, in equity, affect the right of Parsons to use the judgment against him as a defence, and the bill ought to be dismissed.

APPEAL from Lincoln Circuit Court.

CARTY WELLS, for Appellant,

Makes the following appoints:

1. The deed and defeasance made at the same time, taken together, have the effect of a mortgage. Gibson having the power to redeem at any time before January 1, 1840, by refunding the money and returning the note.

2. Gibson's sale and assignment to Steele, invested Steele, in equity with the same right.

3. Parsons was in no sense the debtor of William Gibson, until the first January, 1841, when the bond fell due, and the power to redeem ceased.

4. Before that period the money and bond were tendered to him by Gibson's assignee.

5. There was fraud between Parsons and Joseph Gibson, to defeat the operation of the defeasance.

W. M. CAMPBELL, for Appellee.

On behalf of Parsons, I make the following points:

1. Parsons was indebted to Wm. Gibson, on the 2nd of June, 1840, the time when he was summoned as garnishee, as said Wm. Gibson was then the real owner and holder of the note for $300.

2. That fact having been judicially determined by the finding and judgment of the circuit court, it cannot be reversed collaterally in this suit.

3. Wm. Gibson having fraudulently withheld his defeasance bond from record, and having thus caused Joseph Gibson to have Parsons summoned as garnishee, could not set up that secret defeasance as a defence against the claim of Joseph Gibson, nor can any person claiming under him do the same thing either directly or indirectly.

4. It was not the duty of Parsons, when summoned as garnishee to take the place of the defendant in the execution, nor set up defences for him, nor was it his duty to become an interpleader for the benefit of third persons.

5. The tender made by Steele to Parsons, on 13th of June, 1840, and the demand of a conveyance of the land to him, was of no value whatever; because, Steele at that time had no interest in, or claim to the land, either legal or equitable, and he did not acquire any such interest

till the 6th of July following, when the defeasance bond was assigned to him.

6. Steele was fully apprised of the proceeding against Parsons as garnishee, and did not interplead, nor set up his claim, but stood by, and let judgment be rendered against Parsons without objection, and cannot now object to that judgment.

McBRIDE, J., delivered the opinion of the court.

On the 23d June, 1841, Steele filed his bill in chancery in the Lincoln circuit court, making Parsons and William Gibson defendants. The bill states that in April, 1840, Gibson being seized of a half quarter section of land lying in Lincoln county, and containing 80 acres, conveyed the same by deed to Parsons for the sum of $350; fifty dollars of which was paid at the time by Parsons to Gibson, and the remaining $300 secured by note payable on the 1st January, 1841. That although the deed purported on its face to be absolute, yet it was subject to a defeasance bond executed at the same time by Parsons to Gibson, by which Gibson had the privilege of redeeming the land by surrendering the note for $300, and repaying to Parsons the fifty dollars paid, with the accruing interest at the rate of ten per cent., provided this was done prior to the first of January, 1841. That in June, 1840, complainant bought the note from Gibson on Parsons, and on the 13th day of the month he tendered to Parsons the note for $300, the defeasance bond, and the $50, with the interest thereon, and demanded a conveyance of the land to him, but that Parsons refused to accept the tender, or make the conveyance. The prayer of the bill is, that Parsons may be compelled to convey the land to the complainant, Steele.

William Gibson, one of the defendants, made no answer, and the bill was taken as confessed as to him.

The answer of Parsons, the other defendant, admits the execution of the deed from Gibson to himself, and of his note; and the defeasance to Gibson, but insists that the latter was a mere personal favor to Gibson, and for no other purpose. It denies any tender by complainant, but admits a tender by one Seaton, of the money, &c., but insists that he always understood that Seaton was acting for himself, and not for another, and that he knew nothing of the transfer to Steele, the complainant, until the spring of 1841, when they were for the first time shown to him by complainant's counsel. That before the pretended tender by Seaton, he had been regularly summoned as a garnishee, under an execution in favor of Joseph Gibson against William Gibson, and at the

following August term, interrogatories were propounded to him, which he answered at the May term, 1841, admitting his having executed a note to William Gibson for $300, and also that James Gibson had given him notice on the 3rd of May, 1840, that the note was assigned to him. He also charges that the transfer of said note by William Gibson to James, and from James to Nancy Gibson, and by her to Steele, were contrivances to prevent Joseph Gibson from collecting his debt by garnishment. He denies that William Gibson could convey any right to the tract of land in controversy, that could conflict with his title.

To this answer there was a general replication. After several continuances of the cause, on the 6th Nov. 1843, Parsons, by leave of the court, filed an amended answer, stating that after the date of his first answer, on the 22nd October, 1841, a judgment had been rendered in favor of Joseph Gibson against him as garnishee, for the full amount that was due by him on the note given to William Gibson, and making profert of the record. He also charges that said Steele was well apprised of the fact that he had been summoned as garnishee, and had answered, and that proceedings were in progress to obtain a judgment in favor of said Joseph Gibson against him as garnishee, and that he took no steps to interplead, or claim said note or debt, or set up his claim.

At the same term, the complainant filed an amended bill, in which he charges that Parsons was well apprised of the sale of said land by William Gibson to him, before he was summoned as garnishee; that he further knew that complainant had possession of the note, and intentionally concealed the fact from the court; that he fraudulently omitted to state in his answer that the note was given to William Gibson for said land, and that William had the priviledge until the first of January, 1841, to redeem it; that he concealed from the court the fact that this bill in chancery had been brought; and that he might have successfully defeated the claim of Joseph Gibson, if he had taken the proper steps to do so. He also charges that subsequent to the judgment in favor of Joseph Gibson, against Parsons as garnishee, an agreement was entered into between Joseph Gibson and Parsons, by which Joseph agreed to release Parsons from said judgment, if he should lose the land in this suit; but that the agreement was made verbally before the judgment. At the same term of the court, Parsons filed his answer to the amended bill, denying all fraud or improper conduct on his part, and recapitulating the different steps that had been taken in the proceedings of garnishment; states that as garnishee he answered according to the facts as they were known to him, and sets forth his answer; that in his an-

swer he did not set up the transfers to Jas. Gibson and Nancy Gibson, because he considered them fraudulent and void, and believed that the note still belonged to William Gibson; that at the time of his answer as garnishee he had never heard of the claim of Steele to the note, nor did he hear of it until this chancery suit was brought; that he did not set up the claim of Seaton because he considered it fraudulent, and that it was a part of the scheme concocted to cheat Joseph Gibson out of the amount of his judgment against William Gibson, and that he did not wish to become a party thereto. He charges that Steele and Seaton were both well apprised of the nature of Joseph Gibson's claim against William Gibson, and of the fraudulent attempts to cheat Joseph Gibson; that they well knew of the fraudulent assignment to James Gibson, and Nancy Gibson, and that the sale of the note and of the land to Steele, was a part of the same fraudulent attempt to defraud Joseph Gibson, and that Steele was well apprised of that fact; that he did not mention this suit in his answer because it was not then brought. He denies that he could by any proper means have defeated the claim of Joseph Gibson, and that he was not bound to enter into the foul and fraudulent conspiracy for that purpose ; that after the judgment in favor of Joseph Gibson, after the execution was issued thereon, and after a part of the money had been paid, Joseph Gibson did execute to him a paper promising to release said judgment, and refund the money paid if he should lose the land ; he denies that there was any previous understanding or agreement to that effect ; that against the claim of Joseph Gibson, he employed competent counsel, and made all the defence that the facts would warrant.  He denies that the land was worth five or six hundred dollars, but that on the 8th January, 1841, after William Gibson's right to redeem had expired, he offered to let Seaton have the land for an advance of fifty dollars on what it had cost him.

To this answer there was a general replication.  Joseph Gibson, who was made a defendant to the amended bill, failed to answer, and it was taken as confessed as to him.

Upon this state of pleading the trial took place.

The following was the evidence in the cause :

A deed from William Gibson to Jacob M. Parsons, conveying the west half of the northeast qr. of section 31, town 51, range 2, containing 80 acres, for the consideration of $350, dated the 8th April, 1840, and recorded on the same day.  A defeasance bond from Jacb M. Parsons to William Gibson, dated on the same day, and containing the agreement set out in the bill and answer, with an assignment thereon from William

Gibson to David Steele, for the consideration of $400, and dated 6th July, 1840.

A note for $300, payable on the first of January, 1841, executed by Jacob M. Parsons to William Gibson, and dated 8th April, 1840, with an assignment from William Gibson to James Gibson, dated 2nd May, 1840, and assigned by James Gibson to Nancy R. Gibson on the same day, and assigned by Nancy R. Gibson to David Steele, dated 4th June, 1840.

A notice from James Gibson to Jacob M. Parsons, dated the 2nd May, 1840. William Seaton testified that in the month of June, 1840, Steele bought the land mentioned in the bill from William Gibson, paid a part of the purchase money in hand, and gave his note for the balance to be paid in a short time, and he afterwards understood it was all paid. Steele agreed to give $400 for the land; three hundred and fifty to Gibson, and pay Parsons $50 with interest. At the time of the purchase, William Gibson had in his possession the note of Parsons for $300. It had been assigned to James Gibson by William, and by James Gibson to Nancy Gibson. He took the note to Nancy Gibson in company with Steele, and she assigned it to Steele in his presence. On the 13th of the same month he got Philip T. Wells to go with him to Parsons, and then tendered to him, as the agent of Steele, the note of $300, the defeasance mentioned in the bill, and also $54 in silver. He or Wells told Parsons that Steele had purchased the land of William Gibson, and the money, note and defeasance were laid on a block and offered to Parsons, who made no objection to the papers or money, but said he would wait until the fifth Monday in August. He identifies the defeasance filed as an exhibit, with the one he offered to Parsons, but does not recollect whether the assignment to Steele was then endorsed on it or not. Steele bought the land from Gibson in June or July, and before the tender was made to parsons; they were present and traded in person; witness never had any interest in the land or in the trade between the parties; acted only as the agent of Steele. Does not remember that Parsons objected because he had been garnisheed; remembers that he refused until the fifth Monday in August; may have said that he was garnisheed; was present when Gibson and Steele traded, but does not remember all the conversation; does not recollect that William Gibson told him how or why the assignments were made on the note; does not remember that James Gibson or Nancy Gibson told him why the assignments were made. At the time that he went with Steele to James Gibson, there was something said about Parsons having been attached. William Gibson had a horse at the same time.

Steele vs. Parsons.

Philip T. Wells testified that on the 13th June, 1840, at the request of Wm. Seaton, went with him to witness a tender to Parsons. $50 with interest at the rate of ten per cent. was laid down, and also Parson's note to William Gibson for $300. Seaton told Parsons that he acted as the agent of Steele. Parsons replied that he had been garnisheed, and did not feel at liberty to receive any part of the money. The note filed as an exhibit, the witness thinks, the same one offered to be delivered up. There was another paper or obligation presented, but he cannot say that it was the defeasance. Seaton told Parsons that Steele had purchased the land of William Gibson, and that he, Seaton, was acting as the agent of Steele. William Gibson was then insolvent. Parsons and Seaton conversed but little. Witness showed the papers and made tender for Seaton.

John McCormick testified that he was present when a writing was executed by Joseph Gibson to Parsons, by which Gibson bound himself not to push the judgment which he had obtained against Parsons as garnishee, at which time Parsons paid $20 to Joseph Gibson, and took his note for it. The agreement was, that if Parsons gained this suit, he was to pay Joseph Gibson's judgment against him; if not, Gibson was to pay back the $20. This was after the judgment against Parsons. Witness knows the land in controversy. Parsons does not live on it. He cultivated it two years, but has put no improvements on it. The fences have been torn away on one side, and the houses seem not to have been repaired. It was admitted that the agreement between Joseph Gibson and Parsons is not on file, and cannot be found.

James Gibson testified that when the note of $300 was executed, William Gibson owed him $65 and give him Parsons' note as security for the same. William assigned it to him, and he assigned it to his daughter, Nancy K. Gibson, for fear Joseph Gibson's claim would take it out of his hands before Parsons would pay it. He proposed to Parsons to lift the note for $300, and execute to him one for $65, the amount which William owed him; which Parsons agreed to do, but William objected, and said he would either pay witness the $65, or give him personal security. Afterwards William came and got the note, and kept it a day or two, when he and Steele, and Seaton, came to witness' house. William said he was about to sell the land to Steele, or to Steele and Seaton, and that he wanted the note, and would give me his mare, saddle and bridle, for what he owed me. I told him that to accommodate him, I would take his offer; and did so, and gave him up the note. The parties went off to see the land, and witness loaned William the mare to ride. Afterwards, in a week or less, Seaton came back and stated that

Steele had bought the land of William, and requested that Nancy would assign the note to Steele. Seaton said he feared Parsons would be obstinate about the matter. Nancy said she had given nothing for the note, and that she was willing to assign it if it was right. Seaton said he wanted the assignment, in order to show that Steele held the note against Parsons and not her; and she did assign it to Steele. The assignment was dated about a week back, in order to make it correspond with Steele's purchase of the land from William: thinks that when Seaton spoke of Parsons' obstinacy, he said something about garnishment, but is not certain. Sometime before this witness was at New Hope, and William Gibson requested him to try and buy a note which Joseph Gibson, his father, held on him, amounting to about $265. He went and offered the old man every cent which the note called for on its face, including interest at 6 per cent; but he would not take it, insisting that he was entitled to ten per cent : the note on its face was only for 6 per cent. Afterwards I heard William offer to give Seaton $50 to get a settlement with his father and get the suit out of court; and witness agreed to go William's security for the fifty dollars if the matter could be settled ; but Seaton never got the settlement. Supposes that Steele knew of the debt between William and his father when he bought the land. William Sitton testified, that Joseph Gibson had judgment against William Gibson, and the execution was in his hands as sheriff when he went to the clerk's office to get a description of the land to levy on it, and there found the deed from William Gibson to Parsons. Under instructions he then garnisheed Parsons, who told him that he had received a notice from James Gibson that the note had been assigned to him. On the next day he garnisheed James Gibson, who said that he had held the note as security for a debt, but that he had given it up. Witness afterwards saw Seaton, who said that he wanted a compromise with Parsons by which Steele could get the land. Afterwards, Seaton, Gibson, Parsons and witness met at New Hope, on the 8th January, 1841, when Parsons asked the costs on Joseph Gibson's suit, and $50 more than he had given to William Gibson ; and on these terms agreed to give up the land. To this Seaton agreed, provided Steele would consent ; and he paid me the costs amounting to about $50, and took a receipt binding me to refund if Steele did not assent. Afterwards Seaton called on me, and stated that Steele would not consent or agree to the arrangement; when he paid him back his money. When the above arrangement was made, he wrote blank notes for the $350, and gave them to Seaton. Parsons said he was willing to re-convey the land to Wm. Gibson if he would repay him the $50, and deliver up to him his note

Steele vs. Parsons.

for $300; but if he conveyed the land to any other person, he would require an advance of fifty dollars; because, he said, if he sold the land to any other person he would incur some responsibility thereby, but if he conveyed it back to William Gibson he would run no risk, and he wanted to be paid for his responsibility if he incurred any. Witness says he would not have given more than $350 for the land at the time Parsons purchased.

An execution in favor of Joseph Gibson, against William Gibson, for $269 debt, $36 42 damages, and $10 91 costs, with ten per cent. interest, issued on a judgment obtained on the 8th May, 1840; and dated the 22d May, 1840. It was returned by the sheriff "no property found," &c., and that he summoned Parsons as garnishee on the 2nd June, 1840. Also the record of the proceedings against Parsons as garnishee, had in the circuit court up to the judgment, which was rendered at the October term, 1841, for the entire amount of the note and interest, given by Parsons to William Gibson, for the purchase of the land in controversy.

This being all of the evidence, the circuit court decreed a dismissal of the complainant's bill, and adjudged that each party pay his own costs; from which decree the complainant prayed an appeal to this court.

The following are the dates of the several transactions embraced in this controversy:

Deed from W. Gibson to J. M. Parsons, 8th April, 1840; note from Parsons to W. Gibson, do; defeasance from same to same, do; deed recorded, do; note assigned by W. Gibson to James Gibson, 2nd May, 1840; note assigned by James to Nancy Gibson, 2nd May, 1840; judgment of Jos. V. W. Gibson, 8th May, 1840; execution on same, 22nd May, 1840; Parsons garnisheed by Joseph Gibson, 2nd June, 1840; note assigned by N. Gibson to Steele, 4th June, 1840; tender by Seaton to Parsons, 13th June, 1840; assignment of defeasance to Steele, 6th July, 1840; judgment of Gibson v. Parsons, garnishee, 22nd October, 1841.

Having grouped together the dates of the principal transactions between the parties, it will readily be seen that one of two hypothesis must be true, and if either, it will render the decision of this case comparatively easy. The note of Parsons for $300, given for the purchase of the land in controversy, was the property of William Gibson, on the 2d June, 1840, the day when Parsons was served with the garnishment at the suit of Joseph Gibson. William Gibson had the equitable title to the land in controversy, on the 8th May, 1840, the date of the rendition of the judgment in favor of Joseph Gibson against him.

We shall first enquire and endeavor to ascertain from the evidence to whom the note of Parsons belonged, in equity, at the time when he was summoned as garnishee.

For the purpose of this enquiry, we shall commence at a period anterior to the sale of the land to Parsons. From the evidence, we learn that William Gibson, who was in doubtful circumstances, was indebted to his father, Joseph Gibson, in an amount nearly equal to the value of his land; and he was likewise indebted to James Gibson in the sum of $65. This latter sum added to the claim first named, would make William Gibson's indebtedness, to those two individuals alone, amount to about $378. Suit had already been instituted by the father to recover his debt, and it was probable that judgment would be obtained in a few days, which would prevent an alienation of the land, and if enforced by execution would most probably result in a sacrifice of the land. Hence we infer that William Gibson was operated upon by one of two considerations in making a sale of his land to Parsons—first a desire to baffle or defeat the claim of his father, between whom there appears not to have been a very kind state of feelings; or second, to obtain time by this arrangement with Parsons, until he could make another disposition of his land, and thereby prevent its sacrifice. Either was a fraud upon the rights of Joseph Gibson.

The sale of the land was made by William Gibson to Parsons on the 8th April, 1840, when the $50 part of the consideration was paid, and Parsons gave his note for $300, the remaining balance of the purchase money, payable on the 1st Jan., 1841, and also executed the defeasance bond. The deed was admitted to record on the same day. In this condition, the transaction remained; William Gibson remaining in possession of the note and defeasance until within six days before Joseph Gibson obtained his judgment, to-wit : On the 2d May, 1840, (the judgment was rendered on the 8th May, 1840,) when it was doubtless suggested to the mind of William, that the claim he held against Parsons, might or would be garnisheed by his father to satisfy his anticipated judgment. The land had been sold in time to save it from the lien of the judgment, but this new difficulty presented itself, and must be guarded against, and for that purpose it became necessary to divest himself of the legal ownership of Parsons' note. He was likewise indebted to James Gibson, who was his friend, and willing to serve him, and he could safely confide the note to him; the fact of his indebtedness to James, would also give a colorable pretence of fairness to the transfer. The note is accordingly transferred to James Gibson on the 2d May, 1840, as a security for his debt of $65; but James having some

misgivings as to the apparent fairness of the transactions, and fearing that Joseph Gibson might reach the note, or the balance after deducting his $65, by garnisheeing it in his hands, immediately assigns it to his daughter Nancy. Nancy paid no consideration for the assignment, and could only hold the note in trust for her father, provided the assignment by William to him, had been made *bona fide ;* the balance of the note she would hold for William. And so the transaction was regarded by William, who refused his assent to the proposition made by James to Parsons, that he should take up the note given to William, and execute a new note to James himself. The defeasance bond was still in William Gibson's possession.

On the 8th May, 1840, Joseph Gibson obtained judgment against William for the sum of about $313, and on the 22d of the month, sued out execution on his judgment, directed to the sheriff of Lincoln county, who went to the recorder's office to ascertain the numbers, &c., of William's land, when he learned for the first time that the land had been conveyed to Parsons.

On the 2d June, 1840, under the direction of the plaintiff, the sheriff garnisheed Parsons, and James Gibson, on the execution in favor of Joseph against William Gibson. A few days after this an arrangement is made between William and James Gibson, by which the lien of the latter to the extent of $65, on the note of Parsons, was extinguished by the former letting him have a mare, saddle and bridle. Then the note was held by Nancy in trust, exclusively for the benefit of William.

Afterwards, say about the 10th of June, 1840, William undertook to sell the land in controversy to Steele; and to enable Steele to obtain a deed from Parsons it was deemed necessary to have the note assigned to Steele. For this purpose Nancy Gibson was called upon to assign the note on Parsons to Steele, when she replied, that as she gave no consideration for the note, she was willing to assign it to Steele, if it were right for her to do so; and on being informed that it was, she accordingly assigned it, ante-dating the assignment to the 4th June, 1840. There was then a period of upwards of one month, when a note was held by Nancy Gibson, in trust for her father, and William Gibson, and several days in which the entire equitable interest in the Parsons note, was in William Gibson alone, before its assignment to Steele, and consequently subject to the garnishment of Joseph Gibson; and being once so, for however short a period, the right to subject it in the hands of Parsons to the payment of Joseph's debts, was complete, and could not be defeated by any subsequent arrangement of William, or his trustee.

Was Steele affected with notice of Joseph Gibson's equitable right to have the proceeds of the Parsons note applied to the payment of his judgment against William Gibson? We think the evidence abundantly establishes the fact that Steele was fully acquainted with the whole transaction, or that his agent, Seaton, was, and that Steele officiously and wrongfully participated in the devices resorted to, to defeat the claim of Joseph Gibson. At all events, the circumstances which must of necessity have come to his knowledge were of so suspicious and questionable a character as should have put him upon the enquiry, when it would have required but little discernment to have satisfied him that there was fraud and concealment in the transaction. We are of opinion then, that Steele, having willingly and knowingly entered into this transaction, so strongly characterized by fraud, has no right to the interposition of a court of chancery.

This view of the first branch of the case, renders it unnecessary to enquire whether the land was not bound by the lien of Joseph Gibson's judgment, subject to the lien of Parsons for the $50 advanced by him to William Gibson.

The decree of the circuit court, dismissing the complainant's bill, should be affirmed, and the other Judges concurring, the same is affirmed.