DETERMINED IN THE

## FIRST DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

### DURING THE YEAR 1904.

---

### Chicago City Railway Company v. Johanna M. Matthieson, Admx.

#### Gen. No. 11,210.

1. VERDICT—*when, not disturbed.* Where there is contrariety in the evidence and the plaintiff's claim is supported by evidence, it is for the jury to decide as to the credibility of the plaintiff's witnesses, and the verdict will not be disturbed upon appeal as being against the weight of the evidence unless clearly and manifestly so.

2. CROSS-EXAMINATION—*when document may be read upon, for purposes of impeachment.* A paper which has been shown to a witness, read by him, and which he admits to have signed, may, within the discretion of the court, be permitted to be read upon his cross-examination where it contains statements contradictory of the testimony given by him upon the stand.

3. IMPEACHMENT—*how objection that foundation for, has not been laid, should be made.* An objection of this kind must be specific. In this case the foundation was laid for impeachment by certain persons who were not called, but another person was called, and the court treated the matter as a variance between the foundation laid and the actual impeachment, and applied the general rule that all variances must be specifically pointed out in the objection.

4. IMPEACHMENT—*when, proper, notwithstanding the witness practically admits the making of contradictory statements.* It is competent to show the contradictory statements of a witness, where, upon laying the foundation therefor, his answer was indefinite, uncertain and evasive and not more than a partial admission.

5. WITNESS—*when, cannot be corroborated by his own previous*

(246)

*statements.* Where a witness has been sought to be impeached by proof of statements contradictory of his testimony, it is not competent to prove another statement by him made prior to the contrary statements and consistent with his testimony upon the trial, where such evidence is not offered for the purpose of showing that such witness when he made such contradictory statement was influenced by a motive prompting him to make a false statement or by any motive non-existent at the time of the trial, or that his contradictory statement was a falsification of recent date; nor is the rule different where the statements so sought to be proved were given in evidence under oath at a coroner's inquest.

6. INSTRUCTION—*when, though correct, may be properly refused.* Where the substance of an instruction is contained in others given, it may be refused, though correct in itself, without the commission of error.

7. ASSIGNMENT OF ERROR—*function of.* An assignment of error on the record is essential to support a contention that any particular action of the trial court was erroneous.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1903. Affirmed. Opinion filed March 17, 1904.

WILLIAM J. HYNES and EDWARD C. HIGGINS, for appellant; MASON B. STARRING, of counsel.

FRANCIS J. WOOLLEY, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellee sued appellant in case for negligently causing the death of William C. Matthieson, her intestate, and recovered judgment for the sum of $5,000. Appellee will be referred to as plaintiff, and appellant as defendant. It is averred in the declaration that, August 10, 1897, the defendant was operating a street railway on South Halsted street, in the city of Chicago, and that plaintiff's intestate was riding with all due care, etc., on a wagon along said street, near defendant's railway, to wit, near 33rd street, and one of defendant's cars was approaching said wagon from behind, in a northerly direction, and that defendant so negligently operated and controlled said car, that the same then and there ran and struck, with great force and violence, against the wagon in which the plaintiff's intestate was

riding, by means whereof plaintiff's intestate was violently thrown from said wagon and so hurt that he thereafter, to wit, August 11, 1897, died; and that he left surviving him, plaintiff, his widow, and William J., Mary J., John F. and Henry E. Matthieson, his next of kin and only heirs at law, etc.   The defendant pleaded the general issue.

The following statement of facts, including the contentions, respectively, of the plaintiff and the defendant, as to the facts, is taken from the argument of appellant's counsel, and is substantially correct :

"The evidence in the case shows that there is a jog in 33rd street at its intersection with South Halsted street, the western extension of which is a short distance north of that part of the street which runs east from Halsted street. These two streets running east and west, respectively, from Halsted street are known as 33rd street; further south and extending west from Halsted street is a street which is known as 33rd place or 33rd court, and south of this again is 34th street crossing Halsted street.   It appears that the deceased, William C. Matthieson, who was a painter by occupation, accompanied by his son, who was then a young man about nineteen years old, drove his horse and wagon, in which there were pails and other utensils used by him in his business, out of 33rd place or 33rd court, as it is also called, into Halsted street, in the neighborhood of six o'clock in the afternoon on the 10th day of August, 1897, and turned north in Halsted street for the purpose of continuing his journey homeward along that part of 33rd street which extends eastward from Halsted.   The theories of the plaintiff and the defendant on the trial as to the cause and manner of the accident in which Matthieson received the injuries which resulted in his death, were diametrically opposed to each other.   It was the contention of the plaintiff that the deceased and his son drove said wagon northward on Halsted street on what is known as the northbound track of the defendant at a slow speed from 34th street, and that just as they got to 33rd street, extending eastward, and were in the act of turning out of the car track and going into 33rd street, a north-bound car of the defendant company which had come up behind the wagon was driven against and struck the rear of the wagon, thereby breaking the tailboard and left hind wheel of the wagon and tipping the same over, so that the deceased and his

said son were thrown out of the wagon on 33rd street, and the deceased thereby fatally injured; while the contention of the defendant was that said wagon was not struck by a car of the defendant on the north-bound track at all, and that when the deceased and his son turned said horse and wagon into Halsted street and went northward from 33rd place, the horse was going at a very lively gait and appeared to be skittish and excited,' and that when they reached 33rd street, the deceased, who was sitting on the left-hand side, and who had taken the lines from the hands of his son, who was on the driver's seat, at 34th place, turned the horse eastward into 33rd street, and that in thus turning rapidly out of the car track in which the wagon was wheeling, the left hind wheel of the wagon was wrenched and broken, and it swung around and tipped with such force that the deceased and his son were thrown from the wagon after the same had gone a considerable distance into 33rd street, and that the fright of the horse was increased by the rattling and falling out into the street of the tin pails and other paraphernalia which the deceased was carrying, at the time, in his wagon."

Counsel for appellant contend that the verdict is against the weight of the evidence. Having read and carefully considered the evidence and the arguments of counsel in respect thereto, we cannot support this contention. There is a contrariety in the evidence as to the respective claims of the parties as to the facts, and plaintiff's claim is well supported by the evidence. In this state of the evidence it was for the jury to decide as to the credibility of the opposing witnesses, and their verdict cannot be disturbed as being against the weight of the evidence, unless clearly and manifestly so. I. C. R. R. Co. v. Gillis, 68 Ill. 317; Bradley v. Palmer, 193 Ill. 15, 90.

Counsel for defendant have alleged numerous errors, which will be considered in their order. It is objected that the court erred in permitting plaintiff's attorney to read in evidence on the cross-examination of defendant's witness, Fred Kern, a paper claimed to be a statement made by Kern to one Klinge, contradictory of Kern's testimony on the trial. Kern testified that just as the wagon went around the corner of Halsted and 33rd streets on a lively

trot, the wagon upset, and that the car did not touch the wagon; that it was, then, twenty or thirty feet away from the wagon. On cross-examination of Kern, a paper was exhibited to him, signed in his name, and he admitted the signature to be his, and the paper was handed to him, to read it if he so desired; after which, and in answer to the question, " Have you read it ? " he responded, " Yes, I have read it." The court, then, over the objection of defendant's attorney, allowed a part of the paper, which the court held competent, to be read to the jury, as follows :

" Mr. Frank Kern, age fifty-nine years : Was sitting on the right-hand side of the door of my house, 3312 South Halsted street, right side going out; heard the car bell go ding, ding, ding; looked up and saw the wagon turning out of the track going to the east on Thirty-third street; they seemed to turn about the middle of Thirty-third street; when I first saw the wagon the car was about three or four feet from it; it might have been five or six feet away; the car was going slow; the car did not stop at any time before the accident. I could not see the light between the car and the wagon when the man fell."

The statement is clearly contradictory of Kern's testimony, and competent. Defendant's counsel object, first, that Klinge, to whom the statement was made, was not produced; second, that it was error to permit the statement to be read on cross-examination; third, that there was no proof that the statements contained in the paper were made by Kern; fourth, that Kern was not asked whether he made the statements. Dr. S. Paul, a witness for the plaintiff, testified that he inquired for Klinge, the person who wrote the statement, at his last address, and found that he had lived there but had moved away, and he could not, on inquiries, ascertain where he was. While, in general, impeaching evidence like that in question should be introduced by the plaintiff in rebuttal, it is within the discretion of the court to admit it on cross-examination of the witness sought to be impeached. 1 Greenleaf on Ev., sec. 463; 3 Jones on Ev., sec. 850; Spaulding v. Ry. Co. 20 O. Ct. Ct. R. R. 99, 108–9. We think it clear that the admission of the evidence

on cross-examination was not reversible error. We cannot perceive how it could have prejudiced the defendant. The paper and Kern's signature to it were exhibited to him. He was given an opportunity to read it, and said he had read it, and that it was signed by him and was written in his house. Had he denied making the statement, it would have been necessary to call Klinge, or some other witness, to prove it, but, in view of his admissions, it was not necessary. The general rule is thus stated in 29 Am. and Eng. Ency., p. 786 : " Where the contradictory statements were reduced to writing by the witness, or by another and signed by him, the necessity of laying a foundation for the reception of impeaching evidence still remains, but for obvious reasons the limitation as to the time and place of making the statements does not apply. It is sufficient to show the witness the paper or read it to him and question him concerning its genuineness. If he admits that it is in his handwriting, or that he has signed it in its present form, it may, at the proper season, be received in evidence." The text is well supported by adjudged cases. See St. L., M. & S. Ry. Co. v. Faisst, 68 Ark. 587; C., M. & St. P. Ry. Co. v. Artery, 137 U. S. 507, 518–20; State v. Stein, 79 Mo. 330, 332–3; Spaulding v. Ry. Co., 20 Ohio Ct. Ct. Rep. 108–9; Clapp v. Wilson, 5 Denio, 285, 287; Drew v. Wadleigh, 7 Greenl. 94; Momence Stone Co. v. Graves, 197 Ill. 88, 92.

Adolph Meyers, defendant's witness, testified that he saw the accident, and gave material testimony in relation thereto. On cross-examination he was asked if he did not tell Michael Finucane and Ed Getzlaff, in his saloon, a few days after the accident, that he did not see the accident, and said he did not. Subsequently, and after some nineteen witnesses had been examined by defendant's counsel, the plaintiff called in rebuttal a witness named in the record Adolph Reitsloff, who testified that he talked with Adolph Meyers, a saloon-keeper, at the corner of Halsted and 33rd streets, in regard to the accident, a few days after Matthieson's death, when the following occurred :

" Q. Did Meyers, in the course of that conversation, re-

ferring to the accident to Mr. Matthieson, tell you that he did not see the accident ?   A.   No, he said no.

Mr. Hynes :   Wait a minute.

The Court :   Any objection ?

Mr. Hynes :   I don't think, Your Honor, there was any proper foundation laid for this.

The Court :   Well, something, in substance, was said about it.   If you think the foundation was properly laid, why, all right (addressing Mr. Woolley).

(To which ruling of the court the defendant by its counsel then and there duly excepted.)

Mr. Woolley :   Read the question and answer.

(Question and answer read.)

Q.   That is, he didn't see it?

Mr. Hynes :   Don't tell him what he said.

The Court :   The question is, did he say that he didn't see the accident?   A.   He said no.   I asked him first if he did see it.   I was in his saloon, and I asked him first if he saw it, and he told me no."

Meyers had not been questioned as to a statement made by him to any one named Reitsloff.   It is apparent from the court's remarks, that the names of the persons, Finucane and Getzlaff, mentioned in the question to Meyers, had passed from the memory of the court, and defendant's attorney made merely the general objection that no proper foundation had been laid for the evidence.   Suppose the witness to have been Getzlaff, and, by inadvertence, he was called to the witness stand by the name Adolph Reitsloff, or suppose he was not Getzlaff, but, in reality, Reitsloff, and was called by mistake, in either case had the specific objection been made that Meyers' attention had not been called to any statement made by him to a person named Reitsloff, the mistake might have been corrected then and there.   There was a variance between the names of the persons mentioned to Meyers, in his cross-examination, and the name Reitsloff.   When it is objected on a trial that there is a variance between the declaration and the evidence, the well established rule is that the variance must

be specifically pointed out, because it may be in the power of the opposite party to obviate it.   Swift & Co. v. Rut-kowski, 182 Ill. 18.   The declaration is the foundation on which the superstructure of evidence must be based.   It comprehends all that may be proved.   In the case of impeachment, by contradictory statements, the questions put to the witness sought to be impeached and his answers thereto, constitute the foundation for the evidence of the impeaching witness; and we cannot see why the rule requiring variance to be specifically pointed out, is not as applicable in the latter as in the former case.   It must be obvious that the objection might be that time or place was not mentioned to the witness sought to be impeached, or that the question asked him was so different from that asked the impeaching witness as to be no basis for the latter question.   We are of opinion that the general objection made by defendant's attorney was not sufficient; that the reason for the objection that a proper foundation had not been laid should have been specifically stated.

It is objected that the court erred in refusing to permit defendant's counsel to put in evidence the testimony of Frank Kern at the coroner's inquest, for the purpose of showing that his testimony then given was consistent with his testimony on the trial.   Plaintiff's counsel, as heretofore mentioned, had put in evidence a statement of the witness Kern contradictory of his testimony on the trial, which statement seems to have been made after Kern testified before the coroner.   The question is, whether, if a witness is sought to be impeached, by proof of statements contradictory of his testimony, it is competent to prove another statement made by him, prior to the contradictory statement, and consistent with his testimony on the trial, for the purpose of showing that he was consistent.   Counsel cite Gates v. The People, 14 Ill. 433, in support of the affirmative of the question, but we do not so regard it.   In that case, John Devol testified that he was sent by the sheriff to have an interview with Gates, who was in jail, and learn from him what he could about the murder of

Liley, and that he told Gates that he was charged with the murder, and that officers were in pursuit of him, and that he, witness, was willing to assist him and to do whatever he desired; whereupon Gates requested him to go to his brother, John Gates, and tell him to write "that letter," and directed witness to put it in the postoffice, when written; that he, the witness, delivered the message to John Gates, who wrote the letter, and witness, instead of putting it in the postoffice, gave it to the sheriff. It was read on the prisoner's trial for the murder of Liley, and was very incriminating. The defense called witnesses to prove that Devol's reputation for truth was bad, and, in addition, proved that an indictment was *then* pending against him, as an accessory after the fact to the murder of Liley. The court permitted the prosecution to prove by the sheriff that Devol, before seeing John Gates, and before he was accused as accessory to the murder, gave the same account of his interview with the prisoner, which he testified to. The court say : " The testimony of the sheriff was properly admitted to sustain the credibility of the witness. From the fact that an indictment was then pending against the witness, the position would have been taken before the jury that he testified under a strong inducement to relieve himself from all suspicion, by showing that the prisoner and John Gates were the guilty parties. His statement to the sheriff before he was accused, and before he carried the message from the prisoner to John Gates, was made when no such motive existed, and when he could not possibly foresee the result of his interview with the prisoner. If John Gates had refused to write the letter, the interview would not have resulted in any material evidence against the prisoner." The evidence offered in the present case was not for the purpose of showing that Kern, when he made the contradictory statement, was influenced by a motive prompting him to make a false statement, or by any motive nonexistent at the time of the trial, or that his contradictory statement was a falsification of recent date. In Stolp v. Blair, 68 Ill. 541, the court say: "We find the decided.

Chicago City Ry. Co. v. Matthieson.

weight of authority to be, that proof of declarations made by a witness out of court, in corroboration of testimony given by him on the trial of a cause, is, as a general rule, inadmissible, even after the witness has been impeached or discredited; and we are satisfied with the correctness of the rule. The following may be referred to among the authorities sustaining such rule: 2 Phil. Ev., 5th ed., 973, marginal; 1 Stark. Ev. 147; 1 Greenl. Ev., sec. 469; Robb, et al. v. Hackley, et al., 23 Wend. 50; Gibbs v. Tinsley, 13 Verm. 208; Ellicott v. Pearl, 10 Pet. 412; Conrad v. Griffey, 11 How. 480. A collection of cases upon the subject, on either side, will be found in the notes to 2 Phillipps, by Cowen & Hill, 979, marginal, and in the case cited from 11 Howard." It will be seen from these cases that the farthest the Supreme Court has gone, in the admission of such evidence, is to hold that it may be admitted, when the witness is charged with testifying under the influence of some motive prompting him to make a false statement, or in contradiction of evidence tending to show that the witness' account of the transaction was a falsification of a recent date. When one at different times gives two materially different accounts of the same thing, it is not perceived how it tends to contribute to his credibility or consistency to show that he gave one of the two accounts at another time; that he gave one of the accounts twice and the other only once. This would merely raise the question whether the narrator lied twice, or only once. In Hewitt v. Corey, 150 Mass. 445, the court, after referring to certain evidence which had been admitted on the trial, say: "Clearly distinguishable from this is a case where it appears that the witness has at other times made statements inconsistent with his testimony, and where it is plain that he must have been false at one time or the other. In such case he is discredited by reason of his contradictory statements at different times, and it is no restoration of his credit to show that at still other times he has made statements in accordance with his testimony." To the same effect are Riney v. Vallandingham, 9 Mo. 817, 822, citing Phillipps on Evidence;

Nichols v. Stewart, 20 Ala. 358, 361; Commonwealth v. Jenkins, 10 Gray, 485. In the last case an accomplice in larceny had testified for the commonwealth as to his dealings with the defendant concerning the stolen property. The defendant called other witnesses who testified that the accomplice, at a previous time, had given, under oath, a different account of the same transaction. The prosecution then offered to prove that on a prior occasion he had made statements consistent with his testimony on the trial. The court held the evidence inadmissible, saying, among other things: "The utmost that could be claimed for it in this view would be, that it rendered the last statement more probable and worthy of credit, because, although the witness had made a contradictory statement, he had made another statement similar to those to which he had testified before the jury. But such a corroboration is altogether too slight and remote. Indeed, if admitted and followed out to its legitimate result, it might properly lead to a protracted inquiry to ascertain which of the two statements had been made most frequently by the witness; and when this was determined, then it would be necessary to ask the jury to believe the witness, if he had repeated the statement made before them a greater number of times than the contradictory one which had been proved to impeach his evidence. It is obvious that such a course of inquiry would furnish no means by which the credit due to the testimony of a witness could be satisfactorily ascertained." Citing authorities. The fact that the evidence of Kern before the coroner was on oath does not affect the question of its admissibility. In State v. Taylor, 134 Mo. 109, a witness was attacked by proof of contradictory statements, and his testimony before the coroner's jury was offered to sustain him. Held, that it was inadmissible. Ib. 154 *et sequens.* See, also, 3 Jones on Ev., sec. 872, and cases cited in note 5. There are adjudged cases on both sides of the question, but in England, and in other jurisdictions in this country, the earlier cases holding the evidence admissible have been overruled (State v. Taylor, *supra,* 154–155; Nichols v. Stewart,

Chicago City Ry. Co. v. Matthieson.

20 Ala. 361–362; Jenkins v. Hudson, 40 Hun, 424), and the text writers, in accordance with the better reason, as we think, seem to be unanimously against its admissibility.   10 Ency. of Pl. & Pr., 329; 1 Greenl. on Ev., 13th ed., sec. 469; 3 Jones on Ev., secs. 872, 873; 3 Chamberlayne's Taylor on Ev., sec. 1476; 1 Wharton on Ev., 2nd ed., sec. 570; 1 Thompson on Trials, secs. 573, 575; Starkie on Ev., 10th Am. ed., sec. 573; 2 Phillipps on Ev., secs. 973, 979–80, top pages 813–14, and 818–19.

In the cross-examination of Mrs. Koehler, a witness for the defendant, she was questioned and answered as follows :

" Q.   Tell us how this horse was acting that you saw yourself, not what your husband said.   A.   I saw him passing, that was all, and he was a little wild.   I can't tell no more.   I said he was a little wild horse.   That is all.   I don't know what he did.  He was wild.   He runs fast; that is all."

The court struck out the answer, as being irresponsive. After the answer had been stricken out, the following occurred :

" Q.   What I am asking you is this : to tell us what you saw with your own eyes that horse was doing there.   Describe it, what he was doing, so we can see.

A.   He did nothing else what I saw.   The horse was a little bit fresh.

Q.   What do you mean by that ?

A.   I cannot tell in English.   By a little fresh I mean he was going fast."

The witness evidently used the words " wild " and " fresh " in the same sense, and as meaning that the horse was going fast.   The ruling of the court was correct, as the answer was not responsive to the question, and the ruling was not prejudicial to the defendant in view of the subsequent examination of the witness.

It is objected that the testimony of Paulsen, called in rebuttal by the plaintiff, was incompetent in view of the testimony of the defendant's witness Kern.   Kern was asked, on cross examination, if he did not, January 6, 1901, at his

place, make a certain statement to Paulsen, which was, in effect, that he could not tell whether or not the car struck the wagon. His indefinite, uncertain and evasive answer was: "It might have been that I stated it." This was the nearest he came to admitting the statement. The contention is, that Kern substantially admitted the statement, and therefore, it was unnecessary and improper to call Paulsen to prove it. There is nothing in the objection, but even though it were tenable, it could not be availed of here, for the reason that when Paulsen was called as a witness no objection was made to his testifying to the statement included in the question to Kern.

The admitting Mrs. Lange to testify, at the time she was called as a witness, was wholly in the discretion of the court.

Lastly, it is complained that the court erred in refusing certain instructions asked by the defendant. The instructions are not numbered, as for the convenience of the court they should be. The first instruction referred to in the argument is substantially included, so far as it is correct, in each of two instructions given at defendant's request. The instruction might have been refused for other valid reasons, and it was properly refused. The remaining refused instructions referred to in defendant's argument, are also substantially included in defendant's given instructions.

A transcript of the record, certified to be complete, was filed March 4, 1903. July 9, 1903, the plaintiff, by leave of court, filed an additional or supplemental transcript, from which it appears that the trial court, June 1, 1903, entered an order amending the bill of exceptions by substituting for the name Adolph Reitsloff, wherever the same appears in said bill of exceptions, the name Edward Getzlaff. October 6, 1903, the defendant by its counsel filed a motion in writing for leave to file an additional assignment of error in these words: "The trial court erred in granting the appellee's motion amending the record and entering the order amending the record in said cause." The court granted the last-mentioned motion October 12, 1903, since

which date no additional assignment of error has been filed, written on, or attached to either the original or supplemental transcript. Rule 12 of the court provides: "The appellant or plaintiff in error shall, in all cases, assign errors at the time of filing his record in this court, and on failing to do so, the case may be dismissed; but other errors may be assigned after the filing of the record, by leave of the court. * * * The assignment of errors and cross-errors must be written upon or attached to the record." In Ditch v. Sennot et al., 116 Ill. 288, 291, the court say: "It has been repeatedly held that no errors would be considered by the court but such as are assigned on the record," citing cases. The rule of the Supreme Court was the same as rule 12 of this court. There being no assignment of error in respect to the amendment of the bill of exceptions, we cannot consider the objections thereto urged by defendant's counsel in their reply brief.

The judgment will be affirmed.

*Affirmed.*